Guy A. THOMPSON, Trustee of the Missouri Pacific Railroad Company, Appellant,

v.

Joseph A. CORMIE and Sarah B. Cormie, Appellee.

No. 15217.

United States Court of Appeals, Fifth Circuit.

April 12, 1955.

Edward M. Carmouche, Nathan A. Cormie, Lake Charles, La., for appellees.

Before HOLMES and BORAH, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellee [1] and her husband, Joseph A. Cormie, filed this action seeking damages resulting from a crossing accident with one of appellant's [2] trains which occurred on December 6, 1951, in Lake Charles, Louisiana. The complaint alleged that appellee and her husband were traveling in a northerly direction along U. S. Highway 42, on a dark night, in an area unfamiliar to them, the automobile being driven by Mr. Cormie; that they did not realize they were approaching a crossing because of appellant's failure to give "notice of such fact"; and that a slow moving switch engine belonging to appellant struck their automobile, demolishing it. They charged the railroad and its employees with nine acts or omissions allegedly constituting negligence, including the failure to install and maintain adequate warnings along the approach to and at the crossing, the failure continuously to sound the whistle and bell on the engine, the failure to have the engine under proper control and the failure to "take the last clear chance to avoid the collision." Mr. Cormie sought damages for his injuries, the loss of the automobile and past and future medical expenses, in the total sum of $113,000. Appellee sought $87,000 for her injuries.

The railroad's answer admitted the occurrence of the accident, but denied the other allegations of the complaint. Affirmatively, it alleged its version of the accident and charged that the sole and proximate cause was the negligence of appellee and her husband. Alternatively, it pleaded contributory negligence and last clear chance.

A bitterly contested trial was held in December, 1952, before the late Judge

Fred G. Hudson, Jr., Monroe, La., E. R. Kaufman, Lake Charles, La., for appellant.

1. Although the names of both plaintiffs below were included in the title of this case when it was officially docketed in this Court, the appellant complains only of that portion of the judgment in favor of Mrs. Cormie.

2. Appellant will be referred to herein as such and as "the railroad."

Porterie and a jury; and a record of some 793 pages was made. The jury returned a verdict in favor of the railroad on Mr. Cormie's claim, but gave appellee $87,000, the exact amount for which she prayed. The verdict was rendered on December 20, 1952, and Judge Porterie immediately made the following statement:

"Let the verdict be entered in the minutes, and it is the order of the Court that it remain non-executory until further orders of this Court."

Appellant's motion for directed verdict at the close of plaintiff's evidence had been overruled, but the Court reserved his ruling on a similar motion made at the close of all evidence. Very shortly after the verdict was entered, appellant renewed its motion for a directed verdict and alternatively moved for judgment notwithstanding the verdict. Judge Porterie ordered the testimony transcribed, but died before passing upon these motions.

On May 4, 1953, appellant filed an alternative motion for new trial which alleged the excessiveness of the verdict, errors in the charge and in the action of the Court with respect to special charges, misconduct of appellee's counsel during the course of the trial and newly discovered evidence. The newly discovered evidence allegedly would show that appellee was not disabled to the extent claimed during the trial and that she was guilty of gross immorality prior to, during and after the trial. A supplemental motion for a new trial, filed March 10, 1954, charged that members of the jury were not fair and impartial but predicated their verdict "mainly if not entirely, upon prejudice and sympathy only; or, alternatively, reached a general verdict by means of unlawful and improper trade or compromise" within the jury room. It also went into great detail about the relationship of appellee and her husband and about her alleged immorality. Numerous affidavits were attached, including one by a juror who discussed in detail the deliberations of the jury, and one by a Mrs. Kershaw.

Mrs. Kershaw's affidavit represented that she and Mrs. Cormie had discussed the accident and that Mrs. Cormie had said she was not asleep (as she had testified at the trial) but had been engaged in a bitter argument with Mr. Cormie about her alleged infidelities as they approached the crossing and that Mr. Cormie had deliberately run into the train in an effort to kill both of them.

On March 15, 1954, a hearing was had before Judge Hunter (who had succeeded Judge Porterie), at which evidence was taken in connection with appellant's motions for new trial and all motions were argued and submitted. Judge Hunter subsequently ordered a remittitur of all sums in excess of $37,500, which was filed, and he denied all of appellant's motions. This appeal is from the judgment in favor of appellee, entered May 12, 1954.

In its voluminous brief, appellant complains not only of Judge Hunter's rulings but also of the unusual circumstances with which the case was attended, of the charge and of the procedures followed by Judge Hunter. It contends that there was no evidence of negligence on its part; that the charge was conflicting, confusing and erroneous; that if it is not entitled to a directed verdict, it should be granted the opportunity to have a different jury pass upon the newly discovered evidence.

We are convinced that there was sufficient evidence, if believed, to support a verdict against the railroad and in favor of Mrs. Cormie and that the trial judge was correct in denying the motion for directed verdict or judgment notwithstanding the verdict. However, we are of the opinion that the judgment must be reversed because of a fundamental error in the charge to the jury; and since the other matters of which appellant complains are not likely to recur in the second trial, we think it unnecessary to discuss or pass upon them.

The charge to the jury was long and, no doubt, confusing. Fourteen special charges were requested by the plaintiffs.

below and the railroad submitted twenty-seven. Among those requested by plaintiffs and granted by the trial judge was the following:

"The law of the State of Louisiana provides that whenever a railroad locomotive engine shall cross over any highway, or municipal street, it shall cause the bell to be rung or the whistle to be blown at a distance of at least three hundred yards from the point of crossing, and the bell shall be kept ringing, or the whistle shall be kept blowing continuously until the crossing is passed.

"The important word in there is 'or'. Apparently, the railroad has complied with the law either by the whistle or the bell. I repeat that:
* * *."

The judge thereupon repeated verbatim the instruction quoted above and added:

"*If you find that the whistle was not continuously blowing or the bell constantly ringing when the train was three hundred yards from the crossing in question, then the defendant railroad was negligent.*" (Emphasis supplied.)

Appellant's objection to this charge as being inapplicable to the factual situation presented was overruled, but at the request of appellant the judge gave the following instruction considerably later in his charge:

"Now, as to the ringing of the bell the requirements of the law are fully complied with if the bell is sounded continuously for three hundred yards. If the entire train movement involved was less than three hundred yards, which may have occurred in this case, then ringing the bell is the only requirement for that distance, and, therefore, if you find from the evidence that the bell here was rung continuously for that distance, then the requirement of the law was complied with."

The instruction requested by the plaintiffs is based upon the requirements of Title 45, Section 561 of the Louisiana Revised Statutes, LSA–R.S. However, Section 565 of that Title provides:

"The provisions of R.S. 45:561 through 45:564 shall not apply to:
* * * * * *

"(2) Cities and towns having a population of over 10,000 inhabitants.

"Also such provisions do not modify or repeal any parochial **or** municipal ordinance relating to signs or signals at public railroad crossings."

■ The record clearly shows that this collision took place in the City of Lake Charles, and we may take judicial notice of the fact that the population of that city was considerably in excess of 10,000 at the time of the accident. Further, there are in the record certified copies of municipal ordinances regulating the blowing of whistles and the ringing of bells at crossings within the city. Moreover, there is nothing in the record to contradict appellant's evidence that the entire movement of the train was considerably less than three hundred yards.

■ We are convinced that the giving of this instruction was fundamental error, because it is plain that the statute upon which it was based had no application at the scene of this accident. While the modification subsequently given at appellant's request gave it the benefit of the evidence showing the entire movement to be less than the statutory distance, it did not remove the requirement that the bell be rung or the whistle blown continuously as provided in the statute. The issue of negligence resulting from the conduct of the train crew was close and was seriously disputed by evidence offered by appellant. The giving of the charge quoted above, in effect, amounted to instruction that the jury could find for the plaintiffs if

they concluded the statute had been violated. This is especially true when it is considered that the Court did not qualify the instruction by explaining at the time that such failure had to be a proximate cause of the collision. No one is able to say what effect this error had upon the jury, but in view of the closeness of the evidence, it seems rather clear that it must have been prejudicial.

■■ This is particularly true when the foregoing charge is considered in connection with one the trial judge gave very shortly thereafter. In reliance upon the opinion of this Court in Thompson v. Gallien, 5 Cir., 127 F.2d 664, appellee requested and the trial judge granted a special instruction as follows:

"If you find by the preponderance of the credible evidence a passenger is asleep in the front seat of an automobile and that automobile suffers an accident, the passenger, being asleep, should not be charged with contributory negligence.

"Thus, if you find from the facts that Mrs. Cormie was asleep at the time of the accident, or immediately prior to the accident, and also find that Mr. Cormie was contributorily negligent, you should not impute his negligence to Mrs. Cormie, and she may recover against the defendant railroad company, if the defendant railroad be proved neglectful by the preponderance of the evidence, furnishing a part of or the whole of the proximate cause."

Then the judge told the jury:

" * * * the position taken by Mr. Cormie is that he was traveling along minding his own business, didn't see any signs, and didn't know the engine was there until later on in the week when he woke up in the hospital. The testimony of his wife is that she was sound asleep and didn't know anything about it until she woke up and found out she had been in an accident. *That, in my opinion, gentlemen, without attempting to tell you what I think about the facts, is one of the most important points in the case for you to determine.*" (Emphasis supplied.)

While we agree with appellee that the jury may well have found her free from contributory negligence under the circumstances revealed in this case, we cannot agree that the law of Louisiana concerning a passenger's being asleep is so positive and clear cut as indicated by the trial judge. As we understand the decisions, a passenger is not necessarily guilty of contributory negligence if he goes to sleep, but he may be found so if there were any peculiar circumstances which would indicate to a reasonable person the necessity to stay awake and remain alert for his own protection.[3] There is nothing to the contrary in the Gallien case, which did not involve the propriety of the charge on the question, but merely held that there was no contributory negligence imputable to the decedent. We think appellant was entitled to some qualification in the charge with respect to Mrs. Cormie's being asleep which would have informed the jury that they should determine the question of her contributory negligence in the light of the circumstances presented.

Appellant complains of many other alleged errors and conflicts in the charge, but we need not discuss them in detail here. While we agree that the charge was unnecessarily long and contained many instructions which must have been confusing to the jury, we think that for the most part the conflicts dealt with issues which were resolved by the jury in appellant's favor.

Because of the errors in the charge, the judgment is reversed and the matter

---

3. See 4 Blashfield, Cyc. of Automobile Law and Practice, Section 2432; Weddle v. Phelan, La.App., 177 So. 407; Clinton v. City of West Monroe, La.App., 187 So. 561; White v. State Farm Mutual Insurance Co., La.App., 55 So.2d 75; Elba v. Thomas, La.App., 59 So.2d 732.

is remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.